529 So.2d 281 (1988)
In re Inquiry Concerning a Judge, re: Wallace E. STURGIS, Jr.
No. 71263.
Supreme Court of Florida.
June 16, 1988.
Roy T. Rhodes, Gen. Counsel, Tallahassee, and William L. Eagan, Sp. Counsel, Orlando, for petitioner, Judicial Qualifications Com'n.
Young J. Simmons and Bruce R. Kaster of Green and Simmons, P.A., Ocala, for respondent.
McDONALD, Chief Justice.
The Judicial Qualifications Commission has filed its report and recommendations in reference to complaints of violation of the Canons of Judicial Conduct by Wallace E. Sturgis, Jr., a circuit judge in the Fifth Judicial Circuit. Judge Sturgis has responded that, while he takes exception to some of the findings of the Commission, he accepts the Commission's recommended action.
We approve the findings and recommendations of the Judicial Qualifications Commission, to which we give great deference, and publish the report of the Commission in full as an appendix following this opinion. By publishing this report, we publicly reprimand Judge Sturgis for the matters contained in the report. In addition, Judge Sturgis is directed to appear personally before *282 this Court, at his personal expense, at a time to be determined by the Court, for an additional oral and public reprimand.
It is so ordered.
EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
OVERTON, J., concurs specially with an opinion, in which McDONALD, C.J., and EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., dissents with an opinion.

APPENDIX

 THE FLORIDA JUDICIAL
 QUALIFICATIONS
 COMMISSION
 SUPREME COURT NO. 71,263
 INQUIRY CONCERNING A
 JUDGE, NO. 87-165
 RECOMMENDATIONS
 The Florida Judicial Qualifications Commission files this, its
recommendations to the Supreme Court of Florida regarding the
Honorable Wallace E. Sturgis, Jr., Circuit Judge of the Fifth
Judicial Circuit, together with its Findings of Fact and
Conclusions[1] in accordance with the Florida Judicial
Qualifications Commission Rules and Article V, Section 12,
Constitution of the State of Florida (1968), as amended. Twelve
members of the Commission participated in the proceedings and
each was present during the taking of testimony.[2]
 BACKGROUND
 On September 25, 1987, the Commission found probable cause to
believe that the Honorable Wallace E. Sturgis, Jr. was guilty of
violating the Code of Judicial Conduct. Thereafter, notice of
formal charges was mailed to him on October 12, 1987. Said notice
was framed in seventeen counts alleging violations while in
service as a circuit judge. Subsequently, on November 30 and
December 1 and 2, 1987, a full public hearing was held in Ocala,
Florida. Immediately thereafter the Commission deliberated in
private and, by a vote of at least nine of its members, found
Judge Sturgis guilty on all counts except Counts IX and XVII, of
which he was found not guilty, and Count XVI which was dropped
prior to the commencement of the public hearing. Finally, as to
Count XIV, although the Commission found Judge Sturgis guilty of
carelessly displaying a handgun, it was concluded that the gun
was not displayed "in an intimidating manner". Accordingly, that
count was modified by the Commission to eliminate the above four
quoted words.
 As to the particular language contained in the fourteen counts
resulting in a finding of guilt, they are a part of the record
and there is no need for word-for-word repetition here. However,
the gravamen of these fourteen transgressions involves: (1) two
instances in which a handgun was displayed while Judge Sturgis
was presiding at hearings; (2) two occasions on which Judge
Sturgis participated in ex parte communications; (3) a
continuation of the practice of law, including the acceptance of
fees after his elevation to the bench; (4) continued service in a
fiduciary capacity after becoming a circuit judge; (5) failing to
administer, account for, or distribute the assets of three
matters, and failing timely to close out the files of two probate
estates and one guardianship estate over a protracted period; (6)
improperly keeping the funds of one of the above-described
matters in a trust account without maintaining a separate ledger;
and (7) using his position as a circuit judge to prevent
inspection of the official court files pertinent to the
*283 matters first above described. A more detailed discussion of the
facts and findings involved in these seven categories is set
forth as follows:
 Displays of a Handgun
 At two separate hearings, involving different cases and
persons, Judge Sturgis produced and brandished a handgun. In both
instances a lawyer approached the bench either to the side of, or
behind, the judge, hoping to assist him in the examination of
written material. These approaches were not threatening, but they
"startled" Judge Sturgis and he produced a gun, waved it, and
admonished the lawyer never again to get behind him. By way of
explanation the judge, in both instances, then recounted how he
had been attacked from behind during a Baker Act hearing and had
admittedly been paranoid on the subject ever after.
 The Commission finds no justification under the circumstances,
on either occasion, for the production and waving of a handgun.
On the other hand, a tape of one of these encounters was played
to the Commission and the judge spoke in level, unexcited tones
and clearly did not lose control of his emotions. In addition,
none of those present at the hearings, although apprehensive of
accidental discharge, were of the opinion that Judge Sturgis
intended to fire the gun. Nevertheless, the Commission finds
these displays of a handgun to be violative of the Code of
Judicial Conduct.
 Ex Parte Communications
 On at least two occasions, Judge Sturgis had ex parte
communications with either litigants or lawyers during the
progress of cases involving the custody of children. The
Commission finds such communications to have been improper.
Indeed, Judge Sturgis admitted on the stand that he had called
one parent about visitation, "in a moment of weakness". The
transcript of the hearing before the Commission is replete with
testimony that Judge Sturgis had an overwhelming concern for the
welfare of children which in large measure accounted for his
resort to these ex parte transgressions. Regardless, the
Commission finds these ex parte communications to be in violation
of the Code of Judicial Conduct.
 The Practice of Law
 The Commission finds irrefutable evidence that Judge Sturgis
engaged in the practice of law between 1973, when he was elevated
to the bench, and 1986 when complaints were leveled. Three
matters which he handled as a practicing lawyer, namely a
guardianship and two estates, he continued to handle, or
neglected to handle, after he became a judge. In support of this
finding, the Commission notes, for example, that after he went on
the bench, Judge Sturgis filed pleadings of record which he
himself prepared and signed. He also in 1979 paid himself $2,500
for services rendered in one of the two probate estates, albeit
he claims these payments were for fees earned prior to going on
the bench. The Commission finds these actions to have been in
violation of the Code of Judicial Conduct.
 Fiduciary Capacities
 Judge Sturgis, while a lawyer, was named as personal
representative in a $600 estate. Also, while still practicing
law, he was named guardian of the property of an incompetent's
estate, worth approximately $20,000, and later personal
representative of that same estate upon the incompetent's death.
He did not resign from any of these three fiduciary appointments
upon his elevation to the bench and in fact continued to serve in
said fiduciary capacities. The Commission finds his service to be
in violation of the Code of Judicial Conduct.
 Administration, Accounting,
 Distribution and Close Out
 There is irony arising from the Commission's conclusion that
Judge Sturgis did not carry out his fiduciary duties in a proper
manner. The Commission, having found that he should not have,
while on the bench, acted either as an attorney or as a fiduciary
at all, now finds that he failed properly to carry out his
responsibilities as
*284 such. Notwithstanding the obvious paradox, Judge Sturgis chose
not to sever his attorney/client and fiduciary relationships
upon ascending to the bench and the Commission finds that having
so chosen, he has hoisted himself on his own petard and must bear
the consequences of his shortcomings. Specifically, Judge Sturgis
over a period of nineteen years filed neither inventories nor
accountings in any of the three matters at issue, nor did he ever
close out the files of either the guardianship or the two probate
estates. The Commission is cognizant of the fact that the failure
to do so in the small $600 probate estate was partially excusable
by reason of its de minimis nature and because the fee agreed
upon was, basically, to make the funeral arrangements.
Accordingly, for that very reason the Commission found Judge
Sturgis not guilty of the charge leveled against him in Count IX.
However, the failure to file inventories, distribute, or account
for, the $20,000 in assets in the guardianship and later when
these assets spilled over into the probate estate, for at least
nineteen years, is in contravention of the Florida Rules of
Probate, the Florida Statutes and falls far below the level of
reasonable performance required of fiduciaries under general
principles. Moreover, the Commission finds competent and
substantial evidence to support the proposition that there were
two parcels of real property in which the decedent of the $20,000
estate may have had an interest. Yet, Judge Sturgis never
included these two parcels among the assets which he was required
to take into account. Judge Sturgis attributes his failure to
distribute the liquid assets of the $20,000 estate on his
inability to locate the beneficiaries under the probated will.
The Commission cannot accept this explanation and finds that the
failure properly to administer, account for, distribute, and
close out the files in all three matters is in contravention of
numerous provisions of the Florida Probate Code including, but
not limited to, Section 733.816, Florida Statutes (1985), and in
violation of the Code of Judicial Conduct.
 Trust Account and Ledger Violations
 After assuming his judicial duties in 1973, Judge Sturgis
continued to maintain a trust account. The Commission finds no
fault with that in and of itself. However, the Commission finds
that the funds from the $20,000 probate estate at issue were kept
in that same trust account, from time to time, without the
benefit of a separate ledger. They were, therefore, for at least
a short period of time, commingled with other trust funds. Out of
this trust account, or from bank accounts maintained by Judge
Sturgis "as trustee", some $10,000 of the original approximately
$20,000 was paid out to the incompetent prior to his death.
Notwithstanding, and because of earned interest, the balance
finally turned over to Judge Sturgis' named successor as personal
representative was $23,046.50. Of significant importance was the
testimony of that successor personal representative who reported
to the Commission that "the money was all accounted for except
for the possibility of two disbursements". The disbursements
referred to were two checks, each for $1,000, written by mistake
in favor of two beneficiaries under a later will never signed,
but contemplated by the testator while incompetent. Judge Sturgis
concedes that he made these two disbursements in error but
reports he was unable to recover them, because the recipients had
spent the money and were without means to repay the estate when
he requested recoupment. Other than the $2,500 taken as fees, no
proof was presented to support a finding that Judge Sturgis
purloined, used, or diverted any of the estate funds for his
personal use or pecuniary gain and the Commission finds that he
did not do so. On the other hand he had not at the time of the
public hearing replaced the $2,000 erroneously disbursed nor the
$2,500 taken as fees from the $20,000 estate. Moreover, there was
a period of time of some nine months when no interest was earned
on the assets of the estate. Interest earned on estate assets was
apparently never declared on any tax return. Judge Sturgis
defends this omission on the belief that the annual income was
too small to be taxable.
*285 It is the finding of the Commission that Judge Sturgis' actions
in this regard violated the Code of Judicial Conduct.
 Prevention of Inspection of Files
 Over a period of several years, Judge Sturgis retained the
$20,000 probate estate file and its antecedent guardianship file
in his office. The Commission finds that while these files were
so retained, Judge Sturgis deliberately refused to permit
authorized representatives of potential beneficiaries, and/or
heirs, to have access to them until ordered to do so by his chief
judge, notwithstanding the fact that these files constituted a
part of the public records of Marion County. The Commission finds
that the refusal to permit inspection of these files was
inexcusable and in violation of the Code of Judicial Conduct.
 CONCLUSIONS
 The most serious of the charges of wrongdoing emanate from the
guardianship, and later the probate, of a $20,000 estate of a
lifelong friend and client of both the judge's and his father
before him. According to Judge Sturgis, a patriarchal
relationship existed between him and this blind, incompetent,
300-pound client, now deceased (by profession a farmer and a
witch doctor) and the judge felt he was in a unique nondelegable
situation. A petition for surcharge in that estate was filed
against Judge Sturgis. The Commission, subsequent to the hearing,
has now been informed by counsel for the judge that the matter
has been entirely settled for approximately $17,000.
 Either by way of the pleadings or by testimony at the public
hearing, Judge Sturgis has admitted to many of the charges of
which he stands accused, citing sloth, "weakness", "neglect" and,
in the case of the gun incidents, "paranoia". Further, he was
cooperative at the public hearing.
 The Commission has stopped short of recommending Judge Sturgis'
removal from office, in part because he has demonstrably derived
little profit (over a nineteen-year period) from his actions and
the Commission finds that the pursuit of "filthy lucre" was never
his motive. More importantly, the Commission has not recommended
removal because Judge Sturgis demonstrated to its satisfaction
that he has otherwise rendered illustrious service to the public
over a fifteen-year period on the bench.
 A score of witnesses, many without subpoena, attested to his
judicial fitness. Most often quoted were words and phrases like
"highest ethical practice", "compassionate", "fair and
even-handed", "excellent judge", "one of the finest jurists",
"knowledgeable", "patient", and "just". These witnesses came from
all walks of life. Included were judges, bankers, real estate
magnates, a U.S. Congressman, a member of the Florida
Legislature, a doctor, two former local Bar Association
presidents, several lawyers, male and female, a former mayor of
Ocala, and social workers. Poignantly, included were ordinary lay
men and women, whose lives in court had been touched by Judge
Sturgis, and who had discovered by way of the media of his
troubles with the Commission, came forth to attest to his
fitness. Significantly, several representatives of the poor and
oppressed testified about his unending concern for the underdog.
The director of the Withlacoochee Area Legal Services heaped
praise on him with reference to "hundreds of cases". One piece of
testimony, out of many, exemplified Judge Sturgis' extraordinary
concern for children and recounted how the judge had taken a
delinquent child into his own home, fed, clothed and kept him for
several months in a successful effort at rehabilitation.
 Those in trouble can always dig up character witnesses.
However, the quantity, sincerity and depth of feeling apparent
from the testimony in support of Judge Sturgis was most
convincing and the Commission finally called a halt to it as
cumulative and unnecessary.
 ACCORDINGLY, AND IN VIEW OF WHAT HAS GONE BEFORE, it is the
finding and the recommendation, by an affirmative vote of not
less than nine members of this Commission, that the misconduct
*286 engaged in by Judge Sturgis is deserving of a severe public
reprimand. It is further recommended that Judge Sturgis be
required personally to appear before the Supreme Court when these
recommendations are considered and acted upon by the Court.
 /s/ Kathleen T. Phillips
KATHLEEN T. PHILLIPS
Acting Chairman
FLORIDA JUDICIAL
QUALIFICATIONS COMMISSION
 CERTIFICATE OF SERVICE
 I HEREBY CERTIFY that a copy of the foregoing was furnished to
Young J. Simmons, Esq., Counsel to the Respondent, Post Office
Box 3310, Ocala, Florida 32670, and to William L. Eagan, Esq.,
Counsel to the Florida Judicial Qualifications Commission, Post
Office Box 2967, Orlando, Florida 32802, by U.S. Mail, this
15th day of March, 1988.
 /s/ Roy T. Rhodes
Roy T. Rhodes, General Counsel

OVERTON, Justice, concurring specially.
I recognize some may feel that the public reprimand we impose in this case is not consistent with the removal discipline imposed in the Berkowitz matter. I find the two cases distinguishable.
First, in the Berkowitz case, there is no question that he intentionally attempted to mislead the Commission in his testimony concerning its charges against him. That did not occur in the instant case. Second, the practice of law by Berkowitz was clearly for his personal profit, while that factor was not present in this proceeding. Finally, and as expressed in the majority opinion, I give great deference to the recommendation of the Judicial Qualifications Commission, whose members have seen and heard the witnesses.
McDONALD, C.J., and EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, Justice, dissenting.
I see no difference between this case and the case of Judge Irwin A. Berkowitz in Inquiry Concerning a Judge, Re: Irwin A. Berkowitz, 522 So.2d 843 (Fla. 1988).
NOTES
[1] FJQCR 21.
[2] Members participating were: J. Klein Wigginton, Gene A. Whiddon, Nancy N. Mahon, Kathleen T. Phillips, Thomas B. Freeman, Sybil H. Barnes, Harold G. Featherstone, Marvin H. Gillman, Gavin G. Letts (ad hoc appointee for recused member Thomas H. Barkdull, Jr.), Elmer O. Friday, Jr. (ad hoc appointee for recused member C. Welborn Daniel), Joseph J. Reiter (ad hoc appointee for recused member Thomas C. MacDonald, Jr.), and William C. Clark (ad hoc appointee for recused member James C. Clendinen). Member Sam Daniels did not participate due to illness.