McDONALD, Chief Justice.
The Judicial Qualifications Commission has filed its report and recommendations in reference to complaints of violation of the Canons of Judicial Conduct by Wallace E. Sturgis, Jr., a circuit judge in the Fifth Judicial Circuit. Judge Sturgis has responded that, while he takes exception to some of the findings of the Commission, he accepts the Commission’s recommended action.
We approve the findings and recommendations of the Judicial Qualifications Commission, to which we give great deference, and publish the report of the Commission in full as an appendix following this opinion. By publishing this report, we publicly reprimand Judge Sturgis for the matters contained in the report. In addition, Judge Sturgis is directed to appear personally be *282 fore this Court, at his personal expense, at a time to be determined by the Court, for an additional oral and public reprimand.
It is so ordered.
EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
OVERTON, J., concurs specially with an opinion, in which McDONALD, C.J., and EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., dissents with an opinion.
APPENDIX
THE FLORIDA JUDICIAL QUALIFICATIONS COMMISSION
SUPREME COURT NO. 71,263
INQUIRY CONCERNING A JUDGE, NO. 87-165 RECOMMENDATIONS
The Florida Judicial Qualifications Commission files this, its recommendations to the Supreme Court of Florida regarding the Honorable Wallace E. Sturgis, Jr., Circuit Judge of the Fifth Judicial Circuit, together with its Findings of Fact and Conclusions[1] in accordance with the Florida Judicial Qualifications Commission Rules and Article V, Section 12, Constitution of the State of Florida (1968), as amended. Twelve members of the Commission participated in the proceedings and each was present during the taking of testimony.[2]
BACKGROUND
On September 25, 1987, the Commission found probable cause to believe that the Honorable Wallace E. Sturgis, Jr. was guilty of violating the Code of Judicial Conduct. Thereafter, notice of formal charges was mailed to him on October 12, 1987. Said notice was framed in seventeen counts alleging violations while in service as a circuit judge. Subsequently, on November 30 and December 1 and 2, 1987, a full public hearing was held in Ocala, Florida. Immediately thereafter the Commission deliberated in private and, by a vote of at least nine of its members, found Judge Sturgis guilty on all counts except Counts IX and XVII, of which he was found not guilty, and Count XVI which was dropped prior to the commencement of the public hearing. Finally, as to Count XIV, although the Commission found Judge Stur-gis guilty of carelessly displaying a handgun, it was concluded that the gun was not displayed “in an intimidating manner”. Accordingly, that count was modified by the Commission to eliminate the above four quoted words.
As to the particular language contained in the fourteen counts resulting in a finding of guilt, they are a part of the record and there is no need for word-for-word repetition here. However, the gravamen of these fourteen transgressions involves: (1) two instances in which a handgun was displayed while Judge Sturgis was presiding at hearings; (2) two occasions on which Judge Sturgis participated in ex parte communications; (3) a continuation of the practice of law, including the acceptance of fees after his elevation to the bench; (4) continued service in a fiduciary capacity after becoming a circuit judge; (5) failing to administer, account for, or distribute the assets of three matters, and failing timely to close out the files of two probate estates and one guardianship estate over a protracted period; (6) improperly keeping the funds of one of the above-described matters in a trust account without maintaining a separate ledger; and (7) using his position as a circuit judge to prevent inspection of the official court files pertinent to the *283 matters first above described. A more detailed discussion of the facts and findings involved in these seven categories is set forth as follows:

Displays of a Handgun

At two separate hearings, involving different cases and persons, Judge Sturgis produced and brandished a handgun. In both instances a lawyer approached the bench either to the side of, or behind, the judge, hoping to assist him in the examination of written material. These approaches were not threatening, but they “startled” Judge Sturgis and he produced a gun, waved it, and admonished the lawyer never again to get behind him. By way of explanation the judge, in both instances, then recounted how he had been attacked from behind during a Baker Act hearing and had admittedly been paranoid on the subject ever after.
The Commission finds no justification under the circumstances, on either occasion, for the production and waving of a handgun. On the other hand, a tape of one of these encounters was played to the Commission and the judge spoke in level, unexcited tones and clearly did not lose control of his emotions. In addition, none of those present at the hearings, although apprehensive of accidental discharge, were of the opinion that Judge Sturgis intended to fire the gun. Nevertheless, the Commission finds these displays of a handgun to be violative of the Code of Judicial Conduct.

Ex Parte Communications

On at least two occasions, Judge Sturgis had ex parte communications with either litigants or lawyers during the progress of cases involving the custody of children. The Commission finds such communications to have been improper. Indeed, Judge Sturgis admitted on the stand that he had called one parent about visitation, “in a moment of weakness”. The transcript of the hearing before the Commission is replete with testimony that Judge Sturgis had an overwhelming concern for the welfare of children which in large measure accounted for his resort to these ex parte transgressions. Regardless, the Commission finds these ex parte communications to be in violation of the Code of Judicial Conduct.

The Practice of Law

The Commission finds irrefutable evidence that Judge Sturgis engaged in the practice of law between 1973, when he was elevated to the bench, and 1986 when complaints were leveled. Three matters which he handled as a practicing lawyer, namely a guardianship and two estates, he continued to handle, or neglected to handle, after he became a judge. In support of this finding, the Commission notes, for example, that after he went on the bench, Judge Sturgis filed pleadings of record which he himself prepared and signed. He also in 1979 paid himself $2,500 for services rendered in one of the two probate estates, albeit he claims these payments were for fees earned prior to going on the bench. The Commission finds these actions to have been in violation of the Code of Judicial Conduct.

Fiduciary Capacities

Judge Sturgis, while a lawyer, was named as personal representative in a $600 estate. Also, while still practicing law, he was named guardian of the property of an incompetent’s estate, worth approximately $20,000, and later personal representative of that same estate upon the incompetent’s death. He did not resign from any of these three fiduciary appointments upon his elevation to the bench and in fact continued to serve in said fiduciary capacities. The Commission finds his service to be in violation of the Code of Judicial Conduct.

Administration, Accounting, Distribution and Close Out

There is irony arising from the Commission’s conclusion that Judge Sturgis did not carry out his fiduciary duties in a proper manner. The Commission, having found that he should not have, while on the bench, acted either as an attorney or as a fiduciary at all, now finds that he failed properly to carry out his responsibilities as *284 such. Notwithstanding the obvious paradox, Judge Sturgis chose not to sever his attorney/client and fiduciary relationships upon ascending to the bench and the Commission finds that having so chosen, he has hoisted himself on his own petard and must bear the consequences of his shortcomings. Specifically, Judge Sturgis over a period of nineteen years filed neither inventories nor accountings in any of the three matters at issue, nor did he ever close out the files of either the guardianship or the two probate estates. The Commission is cognizant of the fact that the failure to do so in the small $600 probate estate was partially excusable by reason of its de minimis nature and because the fee agreed upon was, basically, to make the funeral arrangements. Accordingly, for that very reason the Commission found Judge Sturgis not guilty of the charge leveled against him in Count IX. However, the failure to file inventories, distribute, or account for, the $20,000 in assets in the guardianship and later when these assets spilled over into the probate estate, for at least nineteen years, is in contravention of the Florida Rules of Probate, the Florida Statutes and falls far below the level of reasonable performance required of fiduciaries under general principles. Moreover, the Commission finds competent and substantial evidence to support the proposition that there were two parcels of real property in which the decedent of the $20,000 estate may have had an interest. Yet, Judge Sturgis never included these two parcels among the assets which he was required to take into account. Judge Sturgis attributes his failure to distribute the liquid assets of the $20,000 estate on his inability to locate the beneficiaries under the probated will. The Commission cannot accept this explanation and finds that the failure properly to administer, account for, distribute, and close out the files in all three matters is in contravention of numerous provisions of the Florida Probate Code including, but not limited to, Section 733.816, Florida Statutes (1985), and in violation of the Code of Judicial Conduct.

Trust Account and Ledger Violations

After assuming his judicial duties in 1973, Judge Sturgis continued to maintain a trust account. The Commission finds no fault with that in and of itself. However, the Commission finds that the funds from the $20,000 probate estate at issue were kept in that same trust account, from time to time, without the benefit of a separate ledger. They were, therefore, for at least a short period of time, commingled with other trust funds. Out of this trust account, or from bank accounts maintained by Judge Sturgis “as trustee”, some $10,-000 of the original approximately $20,000 was paid out to the incompetent prior to his death. Notwithstanding, and because of earned interest, the balance finally turned over to Judge Sturgis’ named successor as personal representative was $23,046.50. Of significant importance was the testimony of that successor personal representative who reported to the Commission that “the money was all accounted for except for the possibility of two disbursements”. The disbursements referred to were two checks, each for $1,000, written by mistake in favor of two beneficiaries under a later will never signed, but contemplated by the testator while incompetent. Judge Sturgis concedes that he made these two disbursements in error but reports he was unable to recover them, because the recipients had spent the money and were without means to repay the estate when he requested re-coupment. Other than the $2,500 taken as fees, no proof was presented to support a finding that Judge Sturgis purloined, used, or diverted any of the estate funds for his personal use or pecuniary gain and the Commission finds that he did not do so. On the other hand he had not at the time of the public hearing replaced the $2,000 erroneously disbursed nor the $2,500 taken as fees from the $20,000 estate. Moreover, there was a period of time of some nine months when no interest was earned on the assets of the estate. Interest earned on estate assets was apparently never declared on any tax return. Judge Sturgis defends this omission on the belief that the annual income was too small to be taxable.
*285 It is the finding of the Commission that Judge Sturgis’ actions in this regard violated the Code of Judicial Conduct.

Prevention of Inspection of Files

Over a period of several years, Judge Sturgis retained the $20,000 probate estate file and its antecedent guardianship file in his office. The Commission finds that while these files were so retained, Judge Sturgis deliberately refused to permit authorized representatives of potential beneficiaries, and/or heirs, to have access to them until ordered to do so by his chief judge, notwithstanding the fact that these files constituted a part of the public records of Marion County. The Commission finds that the refusal to permit inspection of these files was inexcusable and in violation of the Code of Judicial Conduct.
CONCLUSIONS
The most serious of the charges of wrongdoing emanate from the guardianship, and later the probate, of a $20,000 estate of a lifelong friend and client of both the judge’s and his father before him. According to Judge Sturgis, a patriarchal relationship existed between him and this blind, incompetent, 300-pound client, now deceased (by profession a farmer and a witch doctor) and the judge felt he was in a unique nondelegable situation. A petition for surcharge in that estate was filed against Judge Sturgis. The Commission, subsequent to the hearing, has now been informed by counsel for the judge that the matter has been entirely settled for approximately $17,000.
Either by way of the pleadings or by testimony at the public hearing, Judge Sturgis has admitted to many of the charges of which he stands accused, citing sloth, “weakness”, “neglect” and, in the case of the gun incidents, “paranoia”. Further, he was cooperative at the public hearing.
The Commission has stopped short of recommending Judge Sturgis’ removal from office, in part because he has demonstrably derived little profit (over a nineteen-year period) from his actions and the Commission finds that the pursuit of “filthy lucre” was never his motive. More importantly, the Commission has not recommended removal because Judge Sturgis demonstrated to its satisfaction that he has otherwise rendered illustrious service to the public over a fifteen-year period on the bench.
A score of witnesses, many without subpoena, attested to his judicial fitness. Most often quoted were words and phrases like “highest ethical practice”, “compassionate”, “fair and even-handed”, “excellent judge”, “one of the finest jurists”, “knowledgeable”, “patient”, and “just”. These witnesses came from all walks of life. Included were judges, bankers, real estate magnates, a U.S. Congressman, a member of the Florida Legislature, a doctor, two former local Bar Association presidents, several lawyers, male and female, a former mayor of Ocala, and social workers. Poignantly, included were ordinary lay men and women, whose lives in court had been touched by Judge Sturgis, and who had discovered by way of the media of his troubles with the Commission, came forth to attest to his fitness. Significantly, several representatives of the poor and oppressed testified about his unending concern for the underdog. The director of the Withlacoochee Area Legal Services heaped praise on him with reference to “hundreds of cases”. One piece of testimony, out of many, exemplified Judge Sturgis’ extraordinary concern for children and recounted how the judge had taken a delinquent child into his own home, fed, clothed and kept him for several months in a successful effort at rehabilitation.
Those in trouble can always dig up character witnesses. However, the quantity, sincerity and depth of feeling apparent from the testimony in support of Judge Sturgis was most convincing and the Commission finally called a halt to it as cumulative and unnecessary.
ACCORDINGLY, AND IN VIEW OF WHAT HAS GONE BEFORE, it is the finding and the recommendation, by an affirmative vote of not less than nine members of this Commission, that the miscon *286 duct engaged in by Judge Sturgis is deserving of a severe public reprimand. It is further recommended that Judge Sturgis be required personally to appear before the Supreme Court when these recommendations are considered and acted upon by the Court.
/s/ Kathleen T. Phillips
KATHLEEN T. PHILLIPS
Acting Chairman
FLORIDA JUDICIAL
QUALIFICATIONS COMMISSION
CERTIFICATE OF SERVICE
I HEREBY CERTIFY that a copy of the foregoing was furnished to Young J. Simmons, Esq., Counsel to the Respondent, Post Office Box 3310, Ocala, Florida 32670, and to William L. Eagan, Esq., Counsel to the Florida Judicial Qualifications Commission, Post Office Box 2967, Orlando, Florida 32802, by U.S. Mail, this 15th day of March, 1988.
/s/ Roy T. Rhodes
Roy T. Rhodes, General Counsel

. FJQCR21.

. Members participating were: J. Klein Wiggin-ton, Gene A. Whiddon, Nancy N. Mahon, Kathleen T. Phillips, Thomas B. Freeman, Sybil H. Barnes, Harold G. Featherstone, Marvin H. Gill-man, Gavin G. Letts (ad hoc appointee for re-cused member Thomas H. Barkdull, Jr.), Elmer O. Friday, Jr. (ad hoc appointee for recused member C. Welborn Daniel), Joseph J. Reiter (ad hoc appointee for recused member Thomas C. MacDonald, Jr.), and William C. Clark (ad hoc appointee for recused member James C. Clendinen). Member Sam Daniels did not participate due to illness.