581 So.2d 578 (1991)
In re Inquiry Concerning a Judge  re William A. NORRIS, Jr., No. 90-91.
No. 76732.
Supreme Court of Florida.
June 6, 1991.
J. Klein Wigginton, Chairman and Roy T. Rhodes, General Counsel, Tallahassee, and Terrance A. Bostic, Sp. Counsel of Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, for petitioner, Judicial Qualifications Com'n.
W. Dexter Douglass, Tallahassee, and Thomas C. MacDonald, Jr. of Shackleford, Farrior, Stallings and Evans, P.A., Tampa, for respondent.
PER CURIAM.
This proceeding is before the Court for review and disposition of a recommended action of the Judicial Qualifications Commission (JQC). We have jurisdiction. Art. V, § 12, Fla. Const.
In early March 1990, Circuit Judge William Norris, Jr., became despondent over personal problems with his two adult children. These problems began when an undisclosed person or persons sent the children copies of a photograph allegedly depicting Judge Norris engaged in a homosexual act. We must note, however, that the exact nature of the photograph and the date it was taken are a matter of speculation and hearsay. According to the record, both the children destroyed their copies; and the identity of the person who anonymously mailed them remains unknown. Judge Norris himself testified that he had no knowledge of the photograph or how it came to be in existence, and nothing in the record shows otherwise.
After receiving the photograph, Judge Norris' children would not talk with him for several days. Intermediaries, however, informed Judge Norris what had happened. Judge Norris then began drinking alcoholic beverages heavily and continued drinking for the next three days. By his own admission, Judge Norris engaged in a number of irrational or questionable acts during this period of time, including driving while intoxicated and discharging a firearm into a sofa inside his house. Finally, on the third day, Judge Norris ran a hose from his automobile exhaust pipe into the passenger compartment and attempted to commit suicide through carbon monoxide poisoning.
His daughter already had become deeply concerned about Judge Norris' well-being and telephoned local emergency personnel. Heeding her concerns, these personnel arrived at the scene and saved Judge Norris' life. He was briefly hospitalized but otherwise was unharmed.
*579 The undisputed facts show that, following these events, Judge Norris began intensive medical treatment. Although he had never believed himself to be an alcoholic and had never suffered any job-related impairment, his physicians told him he in fact was an alcoholic. Judge Norris then voluntarily admitted himself to a substance-abuse clinic as an in-patient and underwent continuous, residential examination and therapy between April 12 and May 13, 1990. He continues to undergo follow-up therapy.
Both of his children agreed to participate in family therapy, which the doctors had recommended. Soon after the events of March 1990, Judge Norris and his children reconciled. His son, in fact, moved back into Judge Norris' residence.
Judge Norris submitted himself to the Florida Lawyers Assistance Program (FLA), which was created to help substance-abusing attorneys overcome their addictive disorders. He has entered into a rehabilitation contract with FLA and has complied with all the terms imposed upon him, including continuous monitoring and random testing for substance abuse. All tests have been negative. Judge Norris also joined Alcoholics Anonymous (AA). According to the findings of the JQC, Judge Norris maintained 345 continuous days of sobriety prior to the hearing below and had attended 291 meetings of AA. Those who treated Judge Norris stated that he had made considerable progress and showed a positive attitude about his treatment.
The JQC-appointed psychiatrist agreed. He found that Judge Norris was suffering from mild depression but found it was not serious enough even to require medication. The psychiatrist concluded that Judge Norris was "being effectively treated" and found "no evidence that Judge Norris is suffering from a disability which interferes with his ability to carry out the duties of his office."
These statements were reiterated throughout the proceedings below, as witness after witness testified that Judge Norris now is functioning well on the bench. While many witnesses agreed that Judge Norris' conduct violated the Canons of Judicial Ethics, most told the JQC that Judge Norris now has substantially rehabilitated himself and is fully fit to remain on the bench. These witnesses included fellow judges, public officials, and practicing attorneys. Many witnesses noted that Judge Norris' behavior did not involve an abuse of his judicial powers, but a purely personal problem that temporarily overwhelmed him.
Following the hearing, the JQC recommended that Judge Norris be publicly reprimanded for his conduct. The JQC found that Judge Norris' actions in March 1990 violated three canons of judicial ethics.[1] Finally, it recommended that Judge Norris be ordered to appear before this Court to receive his reprimand.
Judge Norris does not contest the JQC's findings and its recommendation of a public reprimand. We adopt the JQC's findings and hereby impose a public reprimand on Judge Norris for his conduct on March 8 through March 10, 1990. We agree that this conduct fell short of the high standards expected of judges, created an appearance of impropriety, and detracted from the dignity of the judicial office.
We do not agree, however, that Judge Norris should be called into this Court to receive his reprimand. Our review of our own precedent on this question shows that such a measure truly is extraordinary and has been done only when the judge's conduct reflects either a wilful disregard of the law or serious, cumulative misconduct on the bench. E.g., In re Sturgis, 529 So.2d 281 (Fla. 1988); In re Block, 496 So.2d 133 (Fla. 1986).
Neither are present here. Indeed, this record shows that Judge Norris' conduct was a one-time personal crisis compounded by the undiagnosed disease of alcoholism that had afflicted him. While this illness resulted in hospitalization and treatment, it *580 did not otherwise interfere with Judge Norris' work; and nothing in this record shows that the misconduct harmed any litigant or resulted in prejudice to anyone's rights. The uncontroverted testimony is that this disease is now under control and does not presently hinder Judge Norris' abilities as a judicial officer.
Likewise, we can conceive of no other purpose that an in-Court reprimand would serve in this case. One of the purposes of such a procedure is to hold the judge up to public criticism, thereby reinforcing the urgent need to correct the misconduct. In this case, any publicity we might give to Judge Norris' case by calling him into Court pales before the intense scrutiny already given him by the statewide press. Because of both our prior case law and the substantial publicity this case already has received, we find no need for Judge Norris to appear before this Court to receive the reprimand.
Finally, we are aware of the broad speculation about Judge Norris' personal life that has arisen from this case. However, we are a Court of law, not a court of rumor and innuendo. Standing in sharp contrast to the fourth-hand, hearsay accounts of a destroyed photograph and the unfounded speculation regarding Judge Norris' personal life are the array of factual accounts, psychological reports, and testimonials that establish a very strong case for mitigation. This record overwhelmingly describes a judge who has been an outstanding public servant for some twenty years, generously giving his time and energy for the betterment of this state and its judiciary, whose work is highly regarded by respected citizens, jurists, and attorneys. It shows that the events of March 1990 were an aberration caused largely by an undiagnosed and untreated disease, which now is under medical control and continuing supervision by capable support organizations. In light of these facts, we agree with the JQC that the appropriate punishment is a public reprimand.
For the foregoing reasons, Judge William A. Norris, Jr., is hereby publicly reprimanded by publication of this opinion in Southern Second.
It is so ordered.
SHAW, C.J. and OVERTON, McDONALD, KOGAN and HARDING, JJ., concur.
BARKETT and GRIMES, JJ., recused.
NOTES
[1] These were canon 1 (duty to uphold integrity of judiciary), canon 2 (duty to avoid appearance of impropriety), and canon 5 (duty to minimize conflict between private and public life).